JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2508 | **DATE** | 11/21/2001 |
| **CASE TITLE** | St. Paul Fire & Marine vs. Jerome P. Genova, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. St. Paul is entitled to a judgment as a matter of law, and its motion for summary judgment is granted. (22-1) Defendant's summary judgment motion is correspondingly denied. More specifically, this Court holds that St. Paul: 1. Has no duty to defend or indemnify City Officials with respect to the Indictment; and 2. Has no duty to reimburse Calumet City for its expenditure of attorney's fees or expenses on behalf of City Officials.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 21 2001 | |
| | Notified counsel by telephone. | date docketed | 31 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SN | courtroom deputy's initials | DOCKETING 01 NOV 21 PM 2:32 | 11/21/2001 date mailed notice |
| | Date/time received in central Clerk's Office | | SN mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ST. PAUL FIRE & MARINE INSURANCE )
COMPANY, )
 )
         Plaintiff, )
 )
v. )  No.  01 C 2508
 )
JEROME P. GENOVA, et al., )
 )
         Defendants. )

DOCKETED

NOV 2 1 2001

MEMORANDUM OPINION AND ORDER

St. Paul Fire & Marine Insurance Company ("St. Paul") has brought this diversity of citizenship action against four defendants--Jerome Genova ("Genova"), Lawrence Gulotta ("Gulotta"), Jerome Stack ("Stack")(collectively "City Officials") and City of Calumet City ("Calumet City")--in search of a declaratory judgment (1) that St. Paul owes no duty to defend or indemnify City Officials with respect to the federal indictment ("Indictment")[1] captioned <u>United States of America v. Jerome P. Genova, Lawrence P. Gulotta and Jerome J. Stack</u>, No. 00 CR 0585 (N.D. Ill. 2000) and (2) that it also has no duty to reimburse Calumet City for attorney's fees or expenses paid on behalf of City Officials in conjunction with that prosecution. St. Paul bases its denial of coverage on several provisions of an insurance policy it issued to Calumet City.

---

[1] St. Paul's Ex. C and defendants' Ex. 4 are copies of the Indictment. Further references will take the form "Count - ¶ --."

Both sides have now filed Fed. R. Civ. P. ("Rule") 56 summary judgment motions, and each has complied with this District Court's LR 56.1.[2] For the reasons set forth in this opinion, St. Paul's motion is granted and defendants' is denied.

Summary Judgment Standards

Familiar Rule 56 principles impose on each movant the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F.3d 262, 264, 265 n.2 (7th Cir.1997)).

Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective--one that this Court has often described as Janus-like--that sometimes calls for the denial of both motions. That has not occurred here because no material facts are in dispute. Instead the question is one of law: whether the insurance policy that St. Paul issued

---

[2] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to St. Paul's LR 56.1(a)(3) statement as "S. St. ¶ --" and to defendants' as "D. St. ¶ --." Those same "S." and "D." abbreviations are used in referring to the parties' exhibits ("Ex."), memoranda ("Mem.") and responsive memoranda ("R. Mem.").

2

to Calumet City covers the conduct charged in the Indictment.

## Background

Throughout the time period relevant to the policy coverage at issue here, Genova was the elected Mayor of Calumet City (D. St. ¶16). Gulotta as City Prosecutor and Stack as City's Public Works Commissioner occupied appointed positions with Calumet City (id. ¶¶17-18).

In April 1998 Calumet City purchased insurance from St. Paul, including a Public Entity Management Liability Policy ("Policy")(S. St. ¶8, S. Ex. A).[3] At the time City Officials were indicted, the policy had been renewed to cover a policy period of April 1, 2000 through April 1, 2001, with a retroactive date of June 6, 1988 (S. St. ¶8).

In August 2000 Calumet City tendered to St. Paul for defense and indemnity the Indictment, which charged among other things that City Officials had committed official misconduct (D. St. ¶20) and had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. §1962)(S. St. ¶15). In addition the Indictment sought forfeiture of approximately $600,000 derived from the illegal activities charged in the

---

[3] In addition to the Public Entity Management Liability portion of the policy, Calumet City also purchased Public Entity General Liability Protection (S. St. ¶8, S. Ex. B). Because the latter portion covers "bodily injury," "property damage" and "personal injury" liability, and because nothing in those categories is alleged in the Indictment, the General Liability portion is inapplicable to this action.

3

Indictment (id. ¶17). St. Paul denied coverage and refused to defend City Officials (D. St. ¶25, D. Ex. 6). On August 27, 2001 City Officials were found guilty of the acts charged in the Indictment (D. St. ¶23).

Relevant Policy Provisions

Included among the terms and conditions of the Policy is this section entitled "What This Agreement Covers" (S. Ex.A at 2):

> **Public entity management liability.** We'll pay amounts any protected person is legally required to pay as damages for covered loss that:
>
> - results from the conduct of duties by or for a public entity; and
> - is caused by a wrongful act committed on or after the retroactive date and before the agreement ends.
>
> *Protected person* means any person or public entity who qualifies as a protected person under the Who is Protected Under This Agreement section.
>
> *Public entity* means a municipality, county, or other governmental body, department, or unit.
>
> *Wrongful act* means any act, error, or omission, including employment-related practices.

That cross-reference to the definition of "protected person"--the section captioned "Who is Protected Under This Agreement"--reads in relevant part (id. at 5-6):

> **Public entity.** If you are a public entity and shown in the Introduction as a named insured, you are a protected person only for the conduct of duties by or for you.
>
> **Elected or appointed officials.** Your lawfully elected or appointed officials are protected persons only for

4

the conduct of their duties for you.

   \*   \*   \*

> **Employees.** Your employees are protected persons only for work done within the scope of their employment by you.

And still another Policy provision that is critical to this action recites (id. at 2):

> **Right and duty to defend a protected person.** We'll have the right and duty to defend a protected person against a claim or suit for loss covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent.
>
>    \*   \*   \*
>
> *Claim* means a demand which seeks monetary damages. *Suit* means a civil proceeding which seeks monetary damages.[4]

Finally, the parties cross swords over the potential applicability of several exclusions contained in the Policy. Here they are (id. at 7, 9-10):

> **Complaint or enforcement action.** We won't cover loss that results from any complaint, enforcement action, claim or suit brought by or for any federal, state, or local governmental regulatory or enforcement agency against any protected person.
>
>    \*   \*   \*
>
> **Intentionally wrongful or dishonest acts.** We won't cover loss that results from any intentionally wrongful, criminal, dishonest, or fraudulent act or omission committed:

---

  [4] [Footnote by this Court] As discussed later, because the Indictment is clearly not a civil proceeding, any Policy language pertaining to a "suit" is inapplicable to the present case.

>    by the protected person; or
>
>    with the consent or knowledge of the protected
>    person.
>
>                *        *        *
>
>    **Unlawful personal gains.** We won't cover loss that
>    results from any protected person's personal profit,
>    advantage, or compensation to which that protected
>    person is not legally entitled.

## Legal Standards

In determining whether an insurance company's duty to defend is triggered under Illinois law (both sides agree that Illinois law controls the dispute), the court must compare the allegations of the underlying complaint to the relevant provisions of the insurance policy (Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co., 139 F.3d 561, 565 (7th Cir. 1998)). If the underlying complaint alleges facts within or even potentially within policy coverage, the duty arises (id.; Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 107, 607 N.E.2d 1204, 1212 (1992)). Thus the possibility that not every allegation in the underlying complaint falls within the scope of potential coverage does not obviate the duty to defend (Roman Catholic Diocese, 139 F.3d at 565). Even a single claim that is potentially within the scope of coverage suffices to give rise to the duty (Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co., 51 F.3d 1336, 1342 (7th Cir. 1995)).

## "Claim" or "Suit"

St. Paul first seeks to jettison defendants' efforts to obtain reimbursement for the sums advanced by Calumet City for City Officials' criminal defense expenditures by urging that neither a "claim" nor a "suit" was involved--the key terms in the Policy's earlier-quoted duty-to-defend provision. That contention is unquestionably sound as to the "suit" category, for of course the Indictment is not a "civil proceeding." But although analysis readily demonstrates that the same answer must be given as to the other concept, that of a "claim," that subject does require more extended treatment.

Certainly the vast majority of criminal indictments cannot even arguably be termed "demand[s] which seek[ ] monetary damages." Does the fact that the Indictment here included a prayer for a $600,000 forfeiture under RICO in addition to its assertion of voluminous criminal charges place the criminal prosecution under the rubric of a "claim" as defined in the Policy? Thoughtful analysis compels a negative answer.

Damages in the law describe the payment made to recoup the harm, measurable in monetary terms, sustained by an injured party at the hands of a wrongdoer--tortfeasor, contract-breaker or what have you. Although that make-whole concept is so fundamental that citation of authority is scarcely required, here is a typical succinct confirmatory statement from 1 Dan B. Dobbs, Law

7

of Remedies §3.1, at 277 (2d ed. 1993):

> The damages remedy is a judicial award in money, payable as compensation to one who has suffered legally recognized injury or harm.

By sharp contrast, forfeitures flow from the notion that property is somehow irreparably tainted--whether malum in se or malum prohibitum--so that no private ownership can be claimed and the property reverts to the sovereign. As to RICO forfeiture, Congress has determined that the criminal activity itself operates to strip the lawbreaker of his ownership interest as a punishment, automatically vesting ownership of the forfeitable property in the government at the very time of the unlawful activity--see, in the specific context of RICO's criminal forfeiture sanction (the identical provision that was involved in the prosecution at issue here), the extended discussion in our Court of Appeals' en banc affirmance of this Court's decision in United States v. Ginsburg, 773 F.2d 798, 800-03 (7th Cir. 1985), followed in such cases as United States v. Robilotto, 828 F.2d 940, 948-49 (2d Cir. 1987) and United States v. Angiulo, 897 F.2d 1169, 1210 (1st Cir. 1990).

Indeed, the bright-line distinction between forfeiture and restitution (the mischaracterization consistently employed in defendants' submissions) is not simply a matter of common sense but is expressly confirmed by the provisions of the United States criminal code. As the 70-page Indictment of City Officials sets

8

out, the <u>Forfeiture Allegations</u> that follow the last of the nine substantive counts claim forfeiture pursuant to 18 U.S.C. §1963, part of the RICO provisions that constitute chapter 96 of the United States Criminal Code. Again by way of contrast, orders of restitution to victims of criminal offenses (not forfeitures to the United States as sovereign) are provided for under 18 U.S.C. §3663--and if even a smidgen of doubt as to that statutory distinction remained on that score, it is conclusively dispelled by a portion of the last-cited section that says this about potential restitution where there is no identifiable victim of drug charges (18 U.S.C. §3663(c)(4)(emphasis added)):

> The court shall not make an award under this subsection <u>if it appears likely that such award would interfere with a forfeiture under</u> chapter 46 or <u>chapter 96 of this title</u> or under the Controlled Substances Act (21 U.S.C. 801 et seq.).

What has just been said is underscored by the fact that the forfeiture of ill-gotten gains to the United States does not in any way relieve the criminal wrongdoer of the obligation to make whole the victims of the offense by way of true restitution. As <u>United States v. Pelullo</u>, 961 F.Supp. 736, 761 (D. N.J. 1997), aff'd without published opinion, 185 F.3d 863 (3d Cir. 1999) has said of the conceptually comparable general forfeiture statute in the criminal code:

> The forfeiture statute, 18 U.S.C. §982, provides that "the court in imposing sentence on a person convicted of an offense in violation of--section 1956, shall order that the person forfeit to the United States any

9

property, real or personal, involved in such offense." Unlike statutory restitution provisions, the forfeiture statute makes no provision for a set-off by reason of the victim's recovery.[5]

In short, perhaps it might not be a stretch to characterize a demand by a crime victim to be restored financially as a "claim," but it would surely strain any proper use of language beyond the breaking point to label a forfeiture count in an indictment, one that will surrender funds to the public fisc rather than restoring those funds to the victims, as a "demand which seeks monetary damages." But even were that not the case, defendants' effort to portray the Indictment's forfeiture allegations as a "claim" for Policy purposes could accomplish nothing more than to bring the matter squarely within the exclusion that provides expressly:

> We won't cover loss that results from any...claim... brought by...any federal...enforcement agency against any protected person.

And that really is the end of the matter, subject only to

---

[5] [Footnote by this Court] As chance would have it, just two days ago this Court took a guilty plea in a criminal case before it, <u>United States v. Disotuar</u>, No. 01 CR 158, that included both a provision for restitution under 18 U.S.C. §3663 and a separate RICO forfeiture provision, with the latter providing expressly:

> The defendant understands that forfeiture of the property and the $547,000 shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the forfeiture judgment and order.

dispatching the equally empty argument by defendants that the just-quoted exclusion, as plain and straightforward as it may be, is somehow unenforceable against them. This opinion will address that issue shortly, though in the interests of completeness it will first briefly explore a byway--another arrow in St. Paul's quiver that it advances as an independent basis for a judgment in its favor.

## "Protected Persons"

Whether City Officials are "protected persons" covered by the Policy is also hotly contested by the parties. City Officials were potentially in that category, for they were either elected or appointed officials of Calumet City during the time period alleged in the Indictment (D. St. ¶15). Nevertheless St. Paul argues they are not "protected persons" because their alleged conduct was outside the bounds of their lawful authority.

As the earlier-quoted "Who is Protected Under This Agreement" provision of the Policy makes clear, a prerequisite for City Officials to qualify as "protected persons" is that at least some of the conduct charged in the Indictment was within the scope of their employment or was performed in the conduct of their official duties.

As to some of the charged conduct at issue here (at least with respect to the alleged Attorney-Fees Kickback Scheme charged in Indictment Count One ¶¶7-23), Illinois caselaw may perhaps be

11

read as looking in two opposite directions--compare, e.g., <u>Wright v. City of Danville</u>, 174 Ill.2d 391, 404-07, 675 N.E.2d 110, 117-19 (1996) with <u>Wilson v. City of Chicago</u>, 120 F.3d 681, 685 (7th Cir. 1997) and <u>Coleman v. Smith</u>, 814 F.2d 1142, 1148-50 (7th Cir. 1987)(both applying Illinois law). But because St. Paul so clearly prevails on the grounds already discussed and next discussed in this opinion, it is unnecessary to parse those cases to tease out an answer--instead it will simply be assumed arguendo that City Officials are "protected persons" for present purposes.

## Exclusions

This opinion has already explained that even on the highly dubious premise that the Indictment's forfeiture allegations can be viewed as a "claim" within the Policy definition, St. Paul is unambiguously relieved of any arguable obligation to provide coverage under the Policy's express "Complaint or Enforcement Action" exclusion. Defendants seek to escape from that death warrant, not by identifying any applicable <u>coverage</u> language in the Policy but by pointing instead to this portion of another Policy <u>exclusion</u> entitled "Intentionally Wrongful or Dishonest Acts":

> However, we will not apply this exclusion unless there
> has been a court determination that intentionally
> wrongful, criminal dishonest, or fraudulent conduct was
> committed by the protected person or with the consent
> or knowledge of the protected person.

12

In the bizarre contract construction universe that defendants occupy, the existence of two Policy exclusions operates to expand rather than to contract a policy's scope of coverage--the sum of two exclusions somehow results in no exclusion whatever!

As defendants would have it, the two exclusionary clauses are inconsistent, hence creating an ambiguity that contra proferentem principles call for resolving against St. Paul and in defendants' favor, so as to preclude the application of the crystal-clear language of the exclusion relied on by St. Paul (D. Mem. 12-14). That position is patently unpersuasive, and the argument is rejected.

There is after all no real conflict between the two cited exclusions. Although the Policy states that St. Paul will not apply the Intentionally Wrongful Acts exclusion unless there has been a court determination that criminal conduct was committed, that does not mean that the other squarely applicable exclusion cannot be applied absent such an order. There is ample room for the two exclusions to apply to different types of claims--perhaps most obviously, for the Complaint or Enforcement Action exclusion to bar coverage (as it expressly says) for any governmental action (of which the Indictment is a paradigmatic example), while the Intentionally Wrong or Dishonest Acts exclusion applies to claims by nongovernmental victims of assertedly criminal activity. Only as to those latter claims is St. Paul foreclosed

13

from claiming noncoverage in the absence of a court determination that the assertedly criminal conduct was really such.

As indicated earlier, defendants' effort to obtain expanded coverage from the claimed interaction of two Policy exclusions defies both logic and the plain language of the Policy itself. It remains only to address one final issue: defendants' equally bootless estoppel argument.

## Estoppel

Defendants' last-ditch effort seeks to preclude St. Paul's reliance on Policy exclusions because it filed this declaratory judgment action just 13 days before City Officials' trial was scheduled to begin. There is, to be sure, an estoppel defense that operates under circumstances other than those involved here: Where an insurer believes that a claim potentially within policy coverage is not in fact covered, the insurer must either defend the claim under a reservation of rights or seek a declaratory judgment that its coverage obligations are not triggered (Employers Ins. of Wausau v. Ehlco Liquidating Trust, 186 Ill.2d 127, 150-51, 708 N.E.2d 1122, 1134-35 (1999)). Failure to take either step where an actual duty to defend exists means that the insurer will be estopped from later relying on policy defenses to coverage, such as policy exclusions (id.).

But Ehlco itself torpedoes defendants' attempt to invoke that doctrine, for it also teaches that such estoppel "applies

14

only where an insurer has breached its duty to defend": It has no application "where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage" (id.). And that teaching has been directly reconfirmed as recently as earlier this month in Northern Ins. Co. of New York v. City of Chicago, No. 1-99-3334, 2001 WL 1355316, at *6 (1st Dist. 2001).

Here the Policy's Complaint or Enforcement Action exclusion expressly negated St. Paul's duty to defend City Officials against the Indictment. Because St. Paul neither had a duty to defend City Officials nor undertook the obligation and then botched the job (Willis Corroon Corp. v. Home Ins. Co., 203 F.3d 449, 452-53 (7th Cir. 2000)), estoppel plays no role here. Hence the cases cited by Defendants relating to insurers' unreasonable delays in filing declaratory judgment actions (e.g., Insurance Co. of the State of Pa. v. Protective Ins. Co., 227 Ill. App.3d 360, 367-68, 592 N.E.2d 117, 122 (1st Dist. 1992)) are inapplicable.

## Conclusion

Although both parties have raised other issues in their briefings, this opinion need not and does not address them. There being no dispute as to the material (that is, outcome-determinative) facts, St. Paul is entitled to a judgment as a matter of law, and its motion for summary judgment is granted.

15

Defendants' summary judgment motion is correspondingly denied. More specifically, this Court holds that St. Paul:

    1. has no duty to defend or indemnify City Officials with respect to the Indictment; and

    2. has no duty to reimburse Calumet City for its expenditure of attorney's fees or expenses on behalf of City Officials.

                                      */s/ Milton I. Shadur*
                                Milton I. Shadur
                                Senior United States District Judge

Date: November 21, 2001